## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDREW P. BLAKE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-206-GMS |
| | ) | |
| DAVID PIERCE, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Andrew P. Blake. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

### MEMORANDUM OPINION

*March 25*, 2014
Wilmington, Delaware

---

[1]Warden David Pierce replaced Warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, Chief Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner Andrew P. Blake ("Blake"). (D.I. 2; D.I. 12) For the reasons

discussed, the court will deny the petition.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

As summarized by the Delaware Supreme Court, the facts leading to Blake's arrest and

conviction are as follows:

> New York Police Department ("NYPD") detectives, accompanied by a Wilmington
> Police Department detective and uniformed officer, responded at about noon to Apartment
> No. 5 on the second floor of an apartment building in Wilmington, Delaware. Wilmington
> officers had information that an individual known to them as "Quest" (Blake) resided there.
> The NYPD detectives were seeking Quest because he had been identified by witnesses as the
> shooter in an incident on New Year's Eve in Manhattan where three people were shot and
> wounded.
>
> Several officers went to the front door of the apartment while others covered the outside
> of the building. The officers at the door knocked and identified themselves as police officers.
> They could hear movement inside the apartment, and a baby's crying that seemed to be
> muffled. No one responded to the door as officers continued to knock over a twenty to thirty
> minute period. The Wilmington detective and an NYPD detective left to go get a search
> warrant.
>
> While the officers were on their way to apply for a search warrant, one of the NYPD
> detectives saw an individual in the apartment, later identified as Blake, raise the window
> screen in one of the windows. Blake pointed a handgun at him and challenged the officers to
> shoot him. The detective relayed by cell phone to the officers at the front door of the
> apartment that the person inside had a gun. The detectives who had left to get a search
> warrant were called back to the scene. The NYPD detective outside saw Blake crash through
> the window and attempt to escape. He ran about two blocks before police apprehended him.
>
> Meanwhile, the officers at the door heard the muffled crying of a baby in the apartment
> during the incident. The NYPD detective at the front door testified that after he heard a crash
> like a window breaking, he heard a sound like a "boom" and then the baby's crying turn into
> "blood curdling" screaming. The detective also heard a foot pursuit over the Wilmington
> officer's radio. The detective testified that the officers at the front door were concerned for
> the infant's safety, forced open the door, and entered the apartment. They found the infant
> on the floor. The officers also performed a safety sweep of the apartment and saw what

appeared to be a small amount of crack cocaine and other drug paraphernalia on the floor
near the infant.

> After Blake was arrested and the apartment secured, the officers left and obtained a
> search warrant. Part of the application for the warrant included what the officers had seen in
> plain view when they performed the safety sweep of the apartment. When the officers
> executed the warrant, they found a handgun hidden in a toilet tank and additional controlled
> substances and paraphernalia in the apartment.

*Blake v. State*, 954 A.2d 315, 316-17 (Del. 2008).

In February 2007, Blake was indicted on charges of possession with intent to deliver
cocaine, possession of a firearm during the commission of a felon (two counts), possession of a
deadly weapon by a person prohibited, aggravated menacing (two counts), resisting arrest,
possession of drug paraphernalia, maintaining a dwelling for the purpose of keeping controlled
substances, and criminal mischief. *See Blake v. State*, 12 A.3d 1153 (Table), 2011 WL 443995,
at *1 (Del. Feb. 8, 2011). Blake filed a motion to suppress evidence, which the Superior Court
denied after holding a hearing. Blake then waived his right to a jury trial, and the trial proceeded
in front of the Superior Court judge. Prior to trial, the State entered a *nolle prosequi* on one
count each of aggravated menacing, possession of a firearm during the commission of a felony,
possession with intent to deliver, and criminal mischief. The court found Blake guilty of
aggravated menacing, use of a dwelling, possession of a firearm during the commission of a
felony, possession of a deadly weapon by a person prohibited, resisting arrest, and possession of
drug paraphernalia. In November 2007, the Superior Court sentenced Blake, effective January 8,
2007, to an aggregate of sixteen years at Level V incarceration, suspended after eleven for two
years at decreasing levels of supervision. *Id.* The Delaware Supreme Court affirmed Blake's
convictions and sentence on direct appeal. *See Blake*, 954 A.2 315.

2

In June 2009, Blake filed a motion for post-conviction relief under Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *See State v. Blake*, 2010 WL 2501524 (Del. Super. Ct. May 27, 2010); *Blake v. State*, 2011 WL 443995 (Del. Feb. 8, 2011).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

3

(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting

4

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C.

5

§ 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341(2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

6

## III. DISCUSSION

Blake's petition asserts the following three grounds for relief: (1) the warrantless entry into and subsequent search and seizure of evidence from the apartment violated Blake's Fourth Amendment rights; (2) Blake did not knowingly, voluntarily, and intelligently waive his right to a jury trial; and (3) trial counsel conducted an inadequate pre-trial investigation, which led to an unsuccessful suppression motion.

### A. Claim One: Illegal Search and Seizure

In claim one, Blake contends that the trial court misapplied the Fourth Amendment by denying his motion to suppress the evidence that was seized after a warrantless entry and search of the apartment. Blake contends that the evidence should have been suppressed as "fruit of the poisonous tree" because the search warrant obtained after the warrantless entry was based on false identification information.

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz,* 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Whether or not a state court

7

incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the "full and fair opportunity" analysis. *See Marshall*, 307 F.3d at 82 ("an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar.").

Here, the record reveals that Blake had a full and fair opportunity to litigate his Fourth Amendment claim. First, he filed a pre-trial motion to suppress the evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, which the Superior Court denied. Second, he filed a direct appeal challenging that decision, and the Delaware Supreme Court affirmed the Superior Court's judgment. Finally, Blake presented the same Fourth Amendment argument to the Delaware state courts in his Rule 61 proceeding, which they denied as meritless. Blake's disagreement with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Given these circumstances, the court will deny claim one.

## B. Claim Two: Involuntary Waiver of Jury Trial

In claim two, Blake contends that he did not voluntarily waive his right to a jury trial. Although Blake presented this claim to the Superior Court in his Rule 61 motion, the Superior Court denied the claim as procedurally barred by Rule 61(i)(3) because Blake did not raise the issue on direct appeal. The Delaware Supreme Court affirmed that decision, explicitly holding that "we agree with the Superior Court's determination that Blake's claim was procedurally barred under Rule 61(i)(3) without exception." *See Blake*, 2010 WL 443995, at *2.

By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus,

8

the court cannot review the merits of claim two absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Blake attempts to establish cause by blaming defense counsel for not presenting this issue on direct appeal. However, in his Rule 61 proceeding, Blake did not present an ineffective assistance of counsel claim based on appellate counsel's failure to present the waiver issue on direct appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted,[3] and cannot excuse Blake's procedural default of the jury waiver claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000). To the extent Blake's *Martinez v. Ryan*, 132 S.Ct. 1309 (2012) argument in his motion for the appointment of counsel (D.I. 29) should be viewed as an attempt to establish cause for his default of his ineffective assistance of appellate counsel claim, it is unavailing. In order for the procedural default of an ineffective assistance of counsel claim to be excused under *Martinez*, a petitioner must demonstrate that there either was no counsel during the first state collateral proceeding (or that the state post-conviction attorney in his first state collateral proceeding was ineffective under the standards established in *Strickland*), that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id*. at 1316, 1320. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *Id*. at 1318 -19. Here, when the Superior Court denied Blake's jury waiver claim as procedurally barred, it alternatively concluded that his jury waiver argument lacked merit. Specifically, after "re-examin[ing] its colloquy with Blake," the

---

[3]*See* Del. Super. Ct. Crim. Rule 61(i)(2).

9

Superior Court opined that "Blake's waiver of jury trial was knowing, intelligent, and voluntary." *Blake*, 2010 WL 2501524, at \*3. Blake's filings in this proceeding do not provide the court with any reason to question that conclusion. As such, the court does not view Blake's claim regarding appellate counsel's failure to raise the jury waiver claim on direct appeal as a "substantial" ineffective assistance claim. Thus, counsel's failure to raise claim two on direct appeal does not constitute cause for Blake's default of claim two.

In the absence of cause, the court will not address the issue of prejudice. Additionally, the court concludes that Blake's default should not be excused under the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claim two as procedurally barred.

### C. Claim Three: Ineffective Assistance of Counsel

In claim three, Blake contends that the affidavit for the search warrant obtained after the warrantless entry falsely identified him as the triggerman in a New York shooting. He believes that the trial court would have granted the suppression motion if it had been informed about the false identification. Blake asserts that counsel did not find out about the false identification because counsel did not conduct a thorough pre-trial investigation. As such, Blake contends that defense counsel provided constitutionally ineffective assistance.

Blake presented the instant ineffective assistance of counsel argument in his Rule 61 proceeding, and both the Superior Court and the Delaware Supreme Court denied the allegation as meritless. Consequently, habeas relief will only be warranted if the Delaware Supreme Court's denial of this allegation was either contrary to, or an unreasonable application of, clearly established federal law.

10

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Here, the Delaware Supreme Court specifically applied the *Strickland* standard when it affirmed the Superior Court's denial of Blake's ineffective assistance allegation regarding counsel's pre-trial investigation and unsuccessful suppression motion. Therefore, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

11

The court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Blake's case. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Blake's ineffective assistance of counsel allegations through "doubly deferential" lens. *Harrington*, 131 S.Ct. at 788. Notably, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

In Blake's Rule 61 proceeding, the Superior Court rejected the instant ineffective assistance of counsel argument after noting that the success of the suppression motion depended on the reasonableness of the warrantless entry into the apartment during which the police saw drugs and paraphernalia in plain sight, and not on the after acquired warrant that may or may not have included incorrect identification information. As held by the Delaware Supreme Court on direct appeal, the warrantless entry was justified under the emergency exception to the Fourth Amendment warrant requirement because of the entry was in response to the baby's bloodcurdling screams. Moreover, probable cause was established in the after acquired warrant affidavit by police observations of contraband in plain view during the initial entry, which was completely independent of the details of Blake's involvement in the New York shooting. As the Superior Court aptly explained in denying the instant ineffective assistance allegation, what "Blake misses [] is that the New York incident was the reason for the detectives' trip here and going to his apartment. It was not the reason or basis for the warrantless entry. Nothing trial counsel would have learned if he investigated New York sources would have changed the [reason or basis for the warrantless entry] even if [the fabricated identification issue were] true." *Blake*, 2010 WL 2501524, at *4.

12

In turn, counsel's Rule 61 affidavit explains why counsel concentrated his efforts on attacking the warrantless entry rather than on challenging the after-acquired warrant affidavit. Specifically, counsel notes that the "affidavit supporting the warrant was rife with references to the items observed during the warrantless entry. If the warrantless entry was unsustainable, the [after-acquired warrant] had no chance of being independently justified." (D.I. 40, Motion to Affirm in *Blake v. State*, No.378,2010 at B10) Counsel explains that the "warrant would almost automatically be considered the fruit of the poisonous tree. Attacking the warrant made no sense if the plain view evidence was coming in; attacking the warrantless entry would effectively eliminate both the plain view evidence and the warrant evidence." *Id.* at B10, B11.

On post-conviction appeal, the Delaware Supreme Court concurred with the Superior Court's reasoning, explaining that, "independent of any information in the affidavit with respect to a New York shooting, the search warrant was, as the Superior Court observed, replete with references to thing the police saw once (properly) inside on the warrantless entry." *Blake*, 2011 WL 443995, at *2. The Delaware Supreme Court then opined that, considering "Blake's underlying claims were without merit, the Superior Court correctly reasoned that Blake was not prejudiced as a result of any alleged ineffectiveness of his counsel with respect to those claims." *Id.*

In this proceeding, Blake does not provide any information demonstrating a reasonable probability that the outcome of the suppression hearing would have been different but for counsel's failure to discover that the NYPD police detectives erroneously identified him as the shooter. Thus, applying the doubly deferential lens required on federal habeas review, the court cannot conclude that the Delaware state courts unreasonably applied *Strickland* in denying the

13

instant ineffective assistance of counsel argument. Accordingly, the court will deny claim three for failing to satisfy § 2254(d).

### D. Motion for Appointment of Counsel

During the pendency of this proceeding, Blake filed a motion requesting the court to appoint counsel. (D.I. 29) Given the court's conclusion that the instant petition does not warrant relief, the court will deny the motion as moot.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Blake's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

14

## V.    CONCLUSION

For the reasons stated, Blake's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.